UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| COMMUNITY ASSOCIATION FOR RESTORATION OF THE ENVIRONMENT, INC., a Washington Non-Profit Corporation; and CENTER FOR FOOD SAFETY, INC., A Washington, D.C. Non-Profit Corporation,<br><br>     Plaintiffs,<br><br> v.<br><br>R & M HAAK, LLC, a Washington Limited Liability Company; and R & M HAAK & SONS DAIRY,<br><br>     Defendants. | NO: 13-CV-3026-TOR<br><br>ORDER DENYING DEFENDANTS' MOTION TO DISMISS |

BEFORE THE COURT is Defendants' Motion to Dismiss (ECF No. 27).

Also before the Court is Defendants' Motion to Strike Declarations (ECF No. 46).

These matters were heard with oral argument on June 7, 2013. Charles M.

Tebbutt, Brad J. Moore, and Elisabeth A. Holmes appeared on behalf of the

ORDER DENYING DEFENDANTS' MOTION TO DISMISS ~ 1

Plaintiffs. Debora K. Kristensen, Dustin E. Yeager, Preston N. Carter, and Mathew L. Harrington appeared on behalf of Defendants. The Court has reviewed the briefing and the record and files herein, had the benefit of oral argument, and is fully informed.

## BACKGROUND

Defendants operate a diary housing a large number of animals, and must handle significant amounts of manure generated by the herd. ECF No. 26 at ¶¶ 35, 38 (First Amended Complaint). The manure is managed in various ways, including: transforming it into compost and selling it, applying it to agricultural fields as fertilizer, and storing liquid manure in lagoons until it is applied to agricultural fields. *Id*. at ¶¶ 40-44. Plaintiffs ("CARE") allege that manure is a solid waste under the Resource Conservation and Recovery Act ("RCRA") because when applied to agricultural fields at above-agronomic levels and leaked from lagoons storing liquid manure it is discarded; thereby causing high levels of nitrates in underground drinking water. CARE alleges that this action is a violation of the RCRA because (1) it causes an imminent and substantial danger to public health and the environment (42 U.S.C. § 6972(a)(1)(B)) ; and (2) constitutes illegal open dumping (42 U.S.C. § 6945(a)).

On February 20, 2013, CARE filed the instant lawsuit alleging violations under RCRA. ECF No. 1. CARE was granted leave to file an Amended

ORDER DENYING DEFENDANTS' MOTION TO DISMISS ~ 2

Complaint in April 2013. *See* ECF No. 26. Presently before the Court is Defendants' motion to dismiss and motion to strike declarations.

DISCUSSION

**I. Defendant's Motion to Strike Declarations**

Defendants ask the Court to strike declarations submitted by CARE as part of their response to Defendants' motion to dismiss, including: the Shaw Declaration (ECF No. 36) and the "Standing Declarations" (ECF No. 37-41). However, the Court does not rely on any of this evidence for the substance of its ruling on Defendants' motion to dismiss. Rather, the Court relies entirely on the Amended Complaint and additional materials appropriately incorporated by reference or a matter of judicial notice. *See United States v. Ritchie*, 342 F.3d 903, 907-908 (9th Cir. 2003)(generally a court may not consider material beyond the pleadings on a 12(b)(6) motion without converting the motion to dismiss to a motion for summary judgment, however, a court may consider materials including documents attached to the complaint, documents incorporated by reference in the complaint, and matters of judicial notice, without converting the motion). Thus, Defendants' motion to strike these exhibits is denied as moot.

///

///

///

ORDER DENYING DEFENDANTS' MOTION TO DISMISS ~ 3

**II. Defendant's Motion to Dismiss**

   **A. Standard of Review**

To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must set forth factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id*.

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The pleading standard set by Rule 8 of the Federal Rules of Civil Procedure "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not

unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. *Id*. at 678-79. In assessing whether Rule 8(a)(2) is satisfied, the Court first identifies the elements of the asserted claim based on statute or case law. *Id*. at 678. The Ninth Circuit follows the methodological approach set forth in *Iqbal* for the assessment of a plaintiff's complaint:

> "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

*Moss v. U.S. Secret Service*, 572 F.3d 962, 970 (9th Cir. 2009) (*quoting Iqbal*, 129 S.Ct. at 1950).

### B. "Solid Waste" Under RCRA

"RCRA is a comprehensive statute that governs the treatment, storage, and disposal of solid and hazardous waste… so as to minimize the present and future threat to human health and the environment." *Meghrig v. KFC Western, Inc*., 516 U.S. 479, 483 (1996). Under the citizen suit provision of RCRA, CARE must establish that Defendants are contributing to the "handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B). CARE does not allege that the manure is hazardous waste. Thus,

ORDER DENYING DEFENDANTS' MOTION TO DISMISS ~ 5

the entire focus of the Court's analysis is whether the manure is a "solid waste" within the meaning of RCRA.

Pursuant to RCRA, "solid waste" is defined as "any garbage, refuse, sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility and other *discarded material*, including solid, liquid, semisolid or contained gaseous material resulting from … agricultural operations…." 42 U.S.C. § 6903(27)(emphasis added).  RCRA does not define "discarded material." However, the Ninth Circuit has defined the term, according to its ordinary meaning, as "to cast aside; reject; abandon; give up." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1041 (9th Cir. 2004)(finding grass residue was not "solid waste" under RCRA).  Further, the court in *Safe Air* found the reasoning of several extra-circuit cases persuasive in identifying whether a material qualifies as "solid waste," particularly: "(1) whether the material is 'destined for beneficial reuse or recycling in a continuous process by the generating industry itself;' (2) whether the materials are being actively reused, or whether they merely have the potential of being reused; (3) whether the materials are reused by its original owner, as opposed to use by a salvager or reclaimer." *Id*. at 1043 (internal citations omitted). Recently, the Ninth Circuit analyzed legislative history and further concluded that "[t]he key to whether a manufactured product is a 'solid waste,' then, is whether that product 'has served its intended purpose and is no longer wanted by the

ORDER DENYING DEFENDANTS' MOTION TO DISMISS ~ 6

consumer.'" *Ecological Rights Foundation v. Pacific Gas and Elec. Co.*, 713 F.3d 502, 515 (9th Cir. 2013)(*citing* H.R. Rep. No. 94-1491(I) at 2 (1976), reprinted in 1976 U.S.C.C.A.N. 6238, 6240)); *see also No Spray Coal., Inc. v. City of New York*, 252 F.3d 148, 150 (2d Cir. 2001)(finding pesticides are not "discarded" when sprayed in the air with the design of effecting their intended purpose). In *Ecological Rights*, the court found only that wood preservative that "escaped" from wooden utility poles through normal wear and tear at a certain age was not "discarded" and therefore not "solid waste;" but expressly did "not decide whether or under what circumstances PCP, wood preservative, or other material becomes a RCRA 'solid waste' when it accumulates in the environment as a natural, expected consequence of the material's intended use." *Id*. at 518.

Defendants argue that manure, used by the dairies as fertilizer, is not "discarded" and is therefore not "solid waste" within the meaning of RCRA. Instead, Defendants contend that the manure is a useful byproduct that is transformed into compost, and applied to surrounding agricultural fields as fertilizer after being stored as liquid manure in lagoons. Defendants point to RCRA's legislative history, as well as federal and state regulations,[1] to support a

---

[1] Defendants cite to EPA regulations exempting from federal waste disposal standards "agricultural wastes, including manures and crop residues, returned to the soil as fertilizers or soil conditioners." 40 C.F.R. § 257.1(c)(1).

finding that manure used as fertilizer is not "solid waste." ECF No. 27 at 5-6.  In enacting RCRA, Congress found that "[a]gricultural wastes which are returned to the soil as fertilizers or soil conditioners are not considered discarded materials in the sense of this legislation." *See Safe Air*, 373 F.3d at 1045-46 (*citing* H.R. Rep. No. 94-1491(I) at 2 (1976), reprinted in 1976 U.S.C.C.A.N. 6238, 6240).  Further, Defendants maintain that the manure is "useful" as a fertilizer, and is not transformed into "solid waste" if it is over-applied or leaked as an unintended consequence of its intended use. ECF No. 27 at 6-7; *see Oklahoma v. Tyson Foods, Inc.*, 2010 WL 653032 at *10 (finding poultry litter applied as fertilizer does not become a "solid waste within the meaning of the RCRA when it is applied to the normal beneficial usage for which the product was intended merely because some aspect of the product is not fully utilized," for example if a particular material is more than "agronomic need"); *Safe Air*, 373 F.3d at 1046 n.13 ("[t]he determination of whether grass residue has been discarded is made independently of how the materials are handled.").  Finally, Defendants argue that imposing RCRA liability for the over-application or leakage of manure as "solid waste" would lead to the "untenable result" of requiring every dairy in the nation to operate as a sanitary landfill.  *See* 42 U.S.C.§ 6903(14)(defining an illegal "open dump" as "any facility or site where solid waste is disposed of which is not a sanitary landfill….").

ORDER DENYING DEFENDANTS' MOTION TO DISMISS ~ 8

CARE acknowledges that solid manure is used onsite as compost and sold off-site; and liquid manure is stored and then applied to fields. ECF No. 25 at ¶¶ 40-44. However, according to CARE, manure that has leaked into groundwater from the liquid manure lagoons and over-applied to fields is "discarded" because it has been abandoned and no longer serves a useful purpose. *See Zands v. Nelson*, 779 F. Supp. 1254, 1261-62 (S.D. Cal. 1991)(finding gasoline leaked from tanks at gasoline stations is a disposal of solid waste because it is no longer a useful product after it leaks into the soil, and has thus been "abandoned" via the leakage). Additionally, CARE takes issue with Defendants' contention that a useful product like manure is not transformed into solid waste when it is unintentionally leaked or allegedly over-applied. When manure is applied in quantities greater than a crop can take in, the nutrients can leach into the soil and groundwater. *See e.g., CARE v. Nelson Faria Dairy LLC*, 2011 WL 6934707 at *6-8 (E.D. Wash. 2011). In their Amended Complaint, CARE alleges that Defendants apply too much manure to their fields, as reflected by high nitrate and phosphorus testing, which is not "agronomic" as manure nutrients become ineffective when over-applied. *See* ECF No. 26 at ¶¶ 64-99. At least one court was unpersuaded by the argument Defendants advance in their motion to dismiss that animal waste was not "solid waste" under the RCRA because it was used as fertilizer. *See Water Keeper Alliance, Inc. v. Smithfield Foods, Inc.*, 2001 WL 1715730 at *4-5 (E.D.N.C.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS ~ 9

2001).  The court found that "[t]he question of whether defendants return animal waste to the soil for fertilization purposes or instead apply waste in such large quantities that its usefulness as organic fertilizer is eliminated is a question of fact."  *Id.* [2]

The crux of CARE's argument is that it is plausible for manure to be "solid waste" after it has ceased to be "beneficial" or "useful" when it is over-applied to the fields and when it has leaked away from the lagoons.  *See Water Keeper Alliance, Inc. v. Smithfield Foods, Inc.*, 2001 WL 1715730 at *4-5 (E.D.N.C. 2001).  The Court agrees.  In making this ruling, the Court does not ignore the practical ramifications of determining when manure may become "discarded" under RCRA after it has ceased to be "useful" or "beneficial," or when it has

---

[2] CARE also supports this argument by attaching a Complaint filed by the EPA in *U.S. v. Seaboard Foods, LLP*, alleging that swine manure was a solid waste when it was leaked from storage facilities and over-applied to fields.  *See* ECF No. 35-1 at ¶¶ 16-20.  However, CARE does not offer any authority allowing the Court to consider this material on a motion to dismiss.  *See United States v. Ritchie*, 342 F.3d 903, 907-908 (9th Cir. 2003).  Moreover, while the characterization of "solid waste" was an allegation in the EPA complaint, there is no indication that the court ever considered the merit of the United States' assertion.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS ~ 10

served its "intended purpose." *Safe Air*, 373 F.3d at 1042; *Ecological Rights*, 713 F.3d at 515.  Nor does the Court disregard the express finding by Congress that "[a]gricultural wastes which are returned to the soil as fertilizers or soil conditioners are not considered discarded materials in the sense of this legislation." *See Safe Air*, 373 F.3d at 1045-46.  However, it is equally untenable that the over-application or leaking of manure that was initially intended to be used as fertilizer can *never* become "discarded" merely because it is "unintentionally" leaked or over-applied.  CARE correctly argues that the distinguishing feature of the cases relied on by Defendants analyzed whether a certain material was "discarded" in the course of its ordinary use in amounts necessary to serve its intended purpose.  *See e.g., Ecological Rights*, 713 F.3d at 515-16 ("wood preservative that has been applied to utility poles to preserve them is being used for its intended purpose…."). In stark contrast, CARE alleges that Defendants have applied manure in amounts *beyond* what is necessary to serve as fertilizer.  *See* ECF No. 26 at ¶ 93.  Thus, the cases cited by Defendants are factually distinguishable from the instant case on this important point.

As aptly stated by the court in *Water Keeper*, "no blanket animal waste exception excludes animal waste from the 'solid waste' definition.  Instead, the determination of whether defendants 'return' animal waste to the soil as [fertilizer] is a functional inquiry focusing on defendants' use of the animal waste products

ORDER DENYING DEFENDANTS' MOTION TO DISMISS ~ 11

rather than the agricultural waste definition." *Water Keeper*, 2001 WL 1715730 at *4. It would be premature at this stage of the proceedings to dismiss this case without any argument or evidence as to whether the manure was put to its intended use and/or used for beneficial purposes by Defendants under the circumstances unique to this case. *See id.* at *4-5 ("[t]he question of whether defendants return animal waste to the soil for fertilization purposes or instead apply waste in such large quantities that its usefulness as organic fertilizer is eliminated is a question of fact."). The Court finds that the allegations in CARE's Amended Complaint state well-pleaded factual allegations that the Defendants over-applied and improperly applied manure to their fields, and allowed liquid manure to leak from lagoons, thereby "discarding" the manure and qualifying it as "solid waste" under RCRA. On this motion to dismiss, these allegations are entitled to the assumption of truth, and state a plausible claim for relief under the tenants of RCRA.

///

///

///

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendants' Motion to Dismiss (ECF No. 27) is **DENIED**.

2. Defendants' Motion to Strike Declarations (ECF No. 46) is **DENIED as moot**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel.

**DATED** June 21, 2013.

THOMAS O. RICE
United States District Judge